UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

SHAWN GREEN,

                Plaintiff,

       -vs-

CENTRAL OFFICE REVIEW COMMITTEE, et
al.,

                Defendants.

**No. 06-CV-6312(MAT)**
**DECISION AND ORDER**

───────────────────────────────

## I.    Introduction

Pro se plaintiff Shawn Green ("Green" or "Plaintff"), an inmate at Southport Correctional Facility ("Southport" or "the Facility") instituted the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. Defendants are individuals or entities employed by or associated with New York State Department of Corrections and Community Supervision ("NYSDOCCS"). Discovery has been completed, and Defendants have filed two Motions to Dismiss (Dkt. ##76 & 78). For the reasons set forth below, the Motions to Dismiss are granted, and Plaintiff's Amended Complaint (Dkt. #53) is dismissed with prejudice.

## II. Background

Plaintiff groups his claims into the following categories: "Discrimination"; "Retaliation"; "Conspiracy"; "First Amendment"; and "Eighth Amendment". The supporting allegations, which do not lend themselves to recitation in a narrative or chronological

-1-

fashion, are set forth below in the sections discussing the individual claims.

## III. General Legal Principles

### A. Standards of Review Applicable With Regard to Fed. R. Civ. P. 12(b)(6) and 12(c) Motions to Dismiss

Dismissal of a complaint for failure to state a claim is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); accord, e.g., Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). "The standard for granting a Rule 12(c) motion [for judgment on the pleadings]. . . is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F .3d 123, 126 (2d Cir. 2001) (citations omitted).

When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a plaintiff's allegations must have a "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, judgment is sought against a pro se litigant, the court must afford the non-movant special solicitude. See Triestman v. Federal Bur. of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). A pro se litigant's submissions must be construed liberally, reading his submissions to raise the strongest arguments that they suggest. Id. At the same time, the Court has no responsibility to read into pro se submissions claims that are not consistent with the litigant's allegations, to imply arguments that the submissions

themselves do not suggest, or to "excuse frivolous or vexatious filings." Id. A party's pro se status "does not exempt [him] . . . from compliance with relevant rules of procedural and substantive law. . . ." Id. (citations and footnote omitted).

### B.   42 U.S.C. § 1983

It is well settled that in order to state a cognizable claim under 42 U.S.C. § 1983, a plaintiff must allege that a defendant engaged in conduct under color of state law that deprives him of rights secured by the Constitution or laws of the United States. E.g., Katz v. Klehammer, 902 F.2d 204, 206 (2d Cir. 1987). To that end, a plaintiff's complaint "must contain specific allegations of fact which indicate a deprivation of Constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987). The § 1983 plaintiff must adequately demonstrate "personal involvement of defendants in alleged Constitutional deprivations," which "is a prerequisite to an award of damages under [that section].'" Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).

### C.   Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST., amend. XI. Notwithstanding the text of the Eleventh Amendment, the Supreme Court has declared a general principle of state immunity from private suit in federal court—whether by "Citizens of another State," "Citizens or Subjects of any Foreign State," or a state's own citizens—unless the state has consented to suit or Congress has explicitly and constitutionally abrogated the state's immunity. See, e.g., Lapides v. Board of Regents of Univ. Sys. of Ga., 535 U.S. 613, ___, 122 S. Ct. 1640, 1643, 152 L.Ed.2d 806 (2002); McGinty v. New York, 251 F.3d 84, 90-91 (2d Cir. 2001). "An official arm of the state," such as NYSDOCCS, "enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999).

## IV.   Analysis

### A.   The "Discrimination" Claims

In this section, see Amended Complaint ("Am. Compl."), ¶¶6-12 (Dkt. #53), Plaintiff complains that Special Housing Unit ("SHU") inmates arriving at Southport are being "denied personal cosmetics upon the issuance of property that are permitted to SHU inmates" and do not have a variety of soaps and deodorants from which to choose. Id., ¶7. He asserts that diabetic inmates, such as himself, are not being "served foods healthy, beneficial and recommended by

American Diabetes Association". Id., ¶8. Plaintiff asserts that he suffers from "*Pseudofolliculitis barbae*" which necessitates the issuance of a clipper rather than a razor, and that Southport officials discriminated against him by not providing him one. Id., ¶9. He contends that SHU inmates at Southport are not provided with raincoats and galoshes during inclement weather, while SHU inmates at other facilities are provided with such supplies. Id., ¶10. He also states that the law library administrator at Southport "would not propose/implement provisions to law-library coordinator that will permit" eligible SHU inmates "some form of special access to the library. . . ." Id., ¶11. Finally, Plaintiff complains that Southport discriminates against SHU inmates by precluding them "from mailing or sending out publications with visitors, which is not standard protocol at other facilities. . . ." Id., ¶12.

Plaintiff alleges that all of the Defendants are liable in their "individual and/official capacities". Id., ¶¶4-5. The relief he seeks is as follows: "injunctive relief and compensatory damages in the amount of [$]5,000.00 from each Defendant mentioned and involved in claims as well as [$]10,000.00 each from Defendants D. Sullivan, McGinnis, D. Napoli, T.G. Eagen, K. Bellamy, CORC, Jane/John Does regarding every violation separately." Id., ¶16.

Defendants counter by asserting that "[o]fficial capacity lawsuits against employees of New York State are barred under the

Eleventh Amendment." Defendants' Memorandum of Law("Defts. Mem.") at 3 (Dkt. #76-2).

### 1.   Claims for Compensatory or Punitive Damages Against Defendants in their Official Capacities

Green cannot maintain any constitutional claims under 42 U.S. § 1983 for compensatory or punitive damages–i.e., damages that are retrospective in natures–against any of the named defendants in their official capacities. E.g., Posr, 180 F.3d at 414 ("The Eleventh Amendment also bars Posr's claims against the various named defendants in their official capacities as state officers. The Eleventh Amendment does not, however, prevent Posr from suing those defendants in their individual capacities.") (internal citation omitted).

### 2.   Claims for Prospective Injunctive Relief Against Defendants in Their Official Capacities

Green also seeks prospective injunctive relief against the defendants in their official capacities with regard to the Discrimination Claims. See, e.g., Am. Compl. at 13, ¶a ("preliminary and thereafter permanent injunctive relief enjoining Southport to comply with the Directive #4933 §§ 302.2(e), (h)(1)(2) (i.e., raincoats and galoshes); id., ¶b ("preliminary and thereafter permanent injunctive relief enjoining Southport to implement policies ensuring SHU inmates have a variety of deodorants and soaps on commissary sheets; shaving equipment such as clippers provided to inmates with *Pseudofolliculitis Barbae*";

-7-

inmates "are permitted to mail or send out publications with visitor(s) at anytime during confinement at facility and special access to law library is rendered to SHU inmates that meet general population criteria. . . ."); id., ¶c ("preliminary and thereafter permanent injunctive relief enjoining [NYSDOCCS] to consult with American Diabetes Association to formalize a therapeutically nutrition [sic] diet for diabetes"; id., ¶d ("declaratory judgment . . . [regarding] practices of rendering mail containing letters from various family members. . . .").

A state's immunity is not shared by state officers to the extent that the suit seeks prospective injunctive or declaratory relief or seeks damages from the officers in their individual capacities. See, e.g., Verizon Maryland, Inc. V. Public Service Com'n of Md., 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of Ex parte Young[, 209 U.S. 123, 159–60 (1908)] avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'") (internal quotation and citation omitted). Green is not entitled to the declaratory and injunctive relief he seeks because he has failed to state a constitutional claim upon which such relief may granted. He asserts that the constitutional basis for the "Discrimination" claims derives from the "First, Eighth, and Fourteenth Amendment[s]". Even construing

-8-

Green's Amended Complaint liberally, as required by law, the allegations under the "Discrimination" section do not implicate the First Amendment.  Viewing the allegations through the lens of the Eighth Amendment, Green could be said to argue that certain restrictions imposed on SHU-status inmates are "cruel and unusual punishment".

To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. E.g., Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitte). These elements include proof that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985), and (2) that the defendants acted with "deliberate indifference." Wilson v. Seiter, 501 U.S. 294, 303-04 (1991). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). In resolving this question, the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. Welch v. Bartlett, 196 F.3d 389, 393 (2d Cir. 1999). When assessing the severity of the

-9-

hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. <u>Arce v. Walker</u>, 139 F.3d 329, 336 (2d Cir. 1998).

With regard to his first allegation concerning Southport's alleged failure to provide raincoats and galoshes to SHU inmates, Defendants refuted that contention in their responses to Green's discovery demands.

Second, Southport does provide a variety of soaps and deodorants to inmates in the commissary—just not the brands desired by Plaintiff. <u>See</u> Dkt. #57, p.323[1] (noting that the commissary has a variety of deodorants and suggesting that if Green had an allergic reaction to any of them, he use a facility sick-call). There is no NYSDOCCS requirement that commissaries provide specific brands of deodorant for purchase by SHU inmates, <u>see</u> Dkt. #57, p.315, and, more importantly, there is no constitutional requirement for such variety in personal care items to be offered to prisoners. Furthermore, Green has not established that there was a medical order or prescription for the items (Dove soap and clippers) he states he was entitled to have. <u>See</u> Dkt. #55 at p.231 ("Grievant was seen by the MD on 6/9/06 and treatment (Lachydrin) was ordered for his feet. There was no order for Dove soap, clippers or referral requested for podiatry. . . . Medical records

---

[1] These page numbers refer to the numbers printed at the bottom right-hand corner of the documents submitted by Defendants as their discovery responses.

indicate Grievant's medical needs are currently being addressed.").

Green's fourth complaint relates to access to the law library for SHU inmates. The Constitution guarantees prisoners meaningful access to the courts, and for pro se plaintiffs, reasonable access to the law library. E.g., Bounds v. Smith, 430 U.S. 817, 821 (1977); Morello v. James, 810 F.2d 344, 346-47 (2d Cir. 1987). That access is not unlimited, however, and prison officials may impose reasonable restrictions on the use of prison law libraries. Morello, 810 F.2d at 347. Moreover, Plaintiff has supplied the Court with no legal authority establishing that SHU inmates must receive the same access to the law library as general population inmates. Plaintiff has failed to sufficiently plead any actual injury resulting from not having access to the law library itself, and he has not demonstrated that he was treated differently than other SHU inmates.

In New York, inmates can be placed in SHU for disciplinary confinement, detention, administrative segregation, protective custody, or for any other reason, with the approval of the deputy commissioner for facility operations. See 7 N.Y.C.R.R. §§ 301.1- 301.7. "Restrictions on telephone use, recreational activities, access to law libraries, visitation, personal property, educational and employment opportunities generally apply to all inmates confined to SHU regardless of the reason that they have been placed there." Nogueras v. Coughlin, 94 Civ. 4094 (JSM), 1996 WL 487951,

at *5 (S.D.N.Y. Aug. 27, 1996) (finding that because plaintiff had not shown that any particular conditions of his confinement were substantially dissimilar to those faced by inmates placed in administrative segregation or protective custody, his confinement did not impose any atypical hardships) (citing, inter alia, Carter v. Carriero, 905 F. Supp. 99, 105 (W.D.N.Y. 1995) (SHU restrictions on law library access, educational opportunities, visitation, telephone use, personal property, employment eligibility, work release, and furloughs did not amount to atypical and significant hardship, even when the inmate was confined to SHU for 270 days). Defendants have submitted documentary proof establishing that SHU inmates receive access to legal materials–namely, two legal books every other day. See, e.g., Dkt. #57, pp.360, 368.

Green's fifth contention is that Southport does not provide nutrition services appropriate for inmates with diabetes. Defendants have refuted that claim. See, e.g., Dkt. #57, p. 346. After Green filed numerous grievances regarding his diet, the Food Service Administrator, J. Irizarry, met with NYSDOCCS' Regional Dietitian to address Green's particular dietary needs, and confirmed that Green is being provided "what is listed on the New York State Modified Menu" for patients with conditions such as diabetes. Id., p.345. Green was informed that if he continued to have concerns, he could address them with NYSDOCCS' Regional Dietitian at Wende Correctional Facility.

Finally, Green contends that the "custom/policy implemented at Southport prohibiting S.H.U. inmates from mailing or sending out publications with visitors . . . is not standard protocol at other facilities and/or specified within sanctions S.H.U. inmates are to serve." Am. Compl. at 4, ¶12. Although this allegation is listed under the heading of "Discrimination", reading it with the most liberal construction possible, it appears to state an equal protection violation inasmuch as Green is claiming that Southport SHU inmates are treated differently from other similarly situated SHU inmates in NYSDOCCS. The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law to similarly situated persons. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005). Plaintiff's allegations are far too vague to state a colorable constitutional claim. For instance, he does not identify the offensive policies, or describe how the policies at Southport are different from those at other NYSDOCCS facilities. Even if Green were allowed to replead, which he has not sought to do, he could not state a colorable constitutional violation in light of the extensive discovery conducted in this case, which failed to reveal a difference in the mailing policies

between Southport and other NYSDOCCS facilities with regard to SHU inmates.

### 3. Claims for Compensatory and Punitive Damages Against Defendants in Their Individual Capacities

For the reasons discussed above in Section IV.A.2, it is "beyond doubt that the plaintiff can prove no set of facts in support of his ["Discrimination"] claim[s] which would entitle him to relief." Lerman v. Board of Elections in City of N.Y., 232 F.3d 135, 140 (2d Cir. 2000) (internal quotation marks and citations omitted). Accordingly, Plaintiff's attempts to seek compensatory and punitive damages against Defendants in their individual capacities based upon the so-called "Discrimination" claims are dismissed with prejudice.

### 4. Lack of Personal Involvement By CORC and Defendants in Supervisory Positions

Plaintiff names the Central Office Review Committee ("CORC") as a defendant and includes it in several of his allegations in the Amended Complaint, including those in the "Discrimination" section. Plaintiff contends that the CORC failed to remedy the various instances of discrimination detailed above after learning of them through Green's grievances. The CORC is a committee within NYSDOCCS; it is neither an agency of New York State, nor is it a "branch" of a state agency. Robinson v. New York State Dept. of Corr. Servs., No. 9:08-CV-091, 2009 WL 3246818, at *9 n.14 (N.D.N.Y. Sept. 30, 2009). Thus, the CORC is not an entity that can

-14-

be served with process. Id. The Court agrees with Defendants that even if service on the CORC could have been effected, all of Plaintiff's claims against the CORC are barred by the Eleventh Amendment. Id.

With regard to Masterson, Eagen, and Bellamy, Plaintiff claims that Masterson erroneously rejected Green's 2004 grievance concerning these issues, and Eagen and Bellamy were "grossly negligent" in failing to prevent the CORC from committing constitutional violations. Am. Compl., ¶¶13-14.

Masterson, who has since retired from NYSDOCCS, was an Affirmative Action Administrator III in 2004, serving as the Americans with Disabilities Act Coordinator for NYSDOCCS. See Dkt. #93. Eagan is referenced in the docket as "Former Director" and Karen Bellamy is referenced in the docket as "Director". The entity with which they are or were affiliated is the CORC. See, e.g., Shaw v. New York Dept. of Corr. Services, No. 10-3030-pr, 451 Fed. Appx. 18 (2d Cir. Dec. 15, 2011).[2]

Defendants argue that the claims against Masterson, Eagen, and Bellamy must be dismissed because they were not personally involved in any of the alleged constitutional violations detailed in Green's Amended Complaint under the heading of "Discrimination." As

---

[2] Defendants' attorney's pleadings fail to clearly explain the title and/or job position held by each of the named defendants. As a consequence, the Court has been required to hunt through the docket to determine if such information has been provided in other pleadings. Some of this information has been gleaned from the interrogatories, but not all defendants have submitted answers to interrogatories.

Defendants point out, "personal involvement . . . in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted). Plaintiff's allegations against Masterson, Eagen, and Bellamy "are nothing more than broad and conclusory statements that do not allege any personal involvement[,]" and "[t]here are no allegations that these defendants were personally involved in any improper conduct." Foreman v. Goord, No. 02 Civ. 7089(SAS), 2004 WL 1886928, at *7 (S.D.N.Y. Aug. 23, 2004). Rather, it appears that Plaintiff is suing these defendants based solely on their supervisory positions within NYSDOCCS. Mere "linkage in the prison chain of command," Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985), is insufficient to make the required showing of "personal involvement", see id. (holding that inmate's claim for monetary damages against State Commissioner of the Department of Correctional Services and superintendent of a correctional facility in civil rights action under 42 U.S.C § 1983 based on fellow inmate's assault required a showing of more than linkage in the prison chain of command to acts of correctional officer who allegedly violated inmate's rights, as doctrine of respondeat superior did not apply to make such defendants liable for officer's acts); accord, e.g., Foreman, 2004 WL 1886928, at *7.

Green has failed to establish personal involvement by Masterson, Eagen, and Bellamy. See Foreman, 2004 WL 1886928, at *7 ("The fact that Superintendent Greiner affirmed the denial of plaintiff's grievances is insufficient to establish personal involvement."). The claims against them accordingly are dismissed.

### B.    The "Retaliation" Claims

In support of his second set of claims under the heading of "Retaliation", Plaintiff contends that "IGP, Supervisor was grossly negligent in managing subordinates who gathered and prepared grievance papers[,]" Am. Compl., ¶22 (Dkt. #53). He states that this "gross negligence" resulted in "Superintendent and CORC committing First Amendment violations as well as creat[ing] a policy or custom under which unconstitutional practices occurred." Id.

He further states that "CORC, D. Napoli, J. Colvin and M. Bridge failed to remedy wrong after learning of it through a grievance and/or appeal and allowed such a policy to continue at Southport." Id., ¶23. Finally, Plaintiff accuses K. Bellamy of being "grossly negligent in failing to prevent CORC from committing constitutional violations by not formulating new policies and procedures . . . ." Id., ¶24.

### 1.    Lack of Personal Involvement

Defendants contend that the claims listed under "Retaliation" should be dismissed on the basis that Bellamy, Napoli, Colvin, and

Bridge were not personally involved in any of the alleged constitutional violations. As noted above, there must be personal involvement by each defendant in order for there to be liability under 42 U.S.C. § 1983. See, e.g., Ayers, 780 F.2d at 210. Here, Bellamy, Napoli, Colvin, and Bridge merely responded to Plaintiff's grievances and were not part of the alleged constitutional violations. See, e.g., Joyner v. Greiner, 195 F. Supp.2d 500, 506 (S.D.N.Y. 2002) ("The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance—which is all that is alleged against him—is insufficient to establish personal involvement or to shed any light on the critical issue of supervisory liability, and more particularly, knowledge on the part of the defendant.") (internal quotation marks and citation omitted). Accordingly, Plaintiff has failed to state a valid cause of action against Bellamy, Napoli, Colvin, and Bridge for retaliation.

> ## 2.   Failure to State a Colorable Claim of Retaliation Against Corrections Officer Skelly

Plaintiff contends that he suffered retaliatory treatment because he filed a grievance "regarding the opening of returned mail" against Corrections Officer ("CO") Skelly.

"[A] claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (citing Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam)). As the

Second Circuit has observed, "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Alleged retaliation against a prisoner is actionable only if the complained-of conduct is likely to chill a person of ordinary firmness from continuing to engage in constitutionally protected activity. Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001) (citing Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999)). Otherwise, the retaliatory act is deemed de minimis and not redressable. See Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir.1999) (per curiam) (noting that there was "a serious question as to whether the alleged acts of retaliation, especially Smith's asserted one-day denial of an opportunity to exercise, were more than de minimis") (citing, inter alia, Thaddeus-X, 175 F.3d at 397).

According to Plaintiff, because he filed the grievance, he was denied a shower by CO Skelly on one unspecified occasion and was denied recreation "numerous" times on unspecified dates. He also states that CO Skelly threw some of Plaintiff's personal items out of his cell. Am. Compl. at 6, ¶20. Plaintiff has not identified the alleged instances of retaliation with sufficient specificity and, moreover, this Court finds as a matter of law that the alleged retaliatory conduct is de minimis and not actionable under the

First Amendment. <u>See</u> <u>Reeder v. Artus</u>, No. 09-CV-575 (DNH/DRH), 2010 WL 3636138, at *6 (N.D.N.Y. July 27, 2010)("Reeder has also failed to allege any facts to establish that any of defendants' alleged adverse actions were motivated by, or temporally related to, any constitutionally protected conduct. Thus, all Reeder has proffered are conclusory allegations to demonstrate that he was the victim of retaliatory conduct. These conclusory allegations, without more, are insufficient to maintain the present claims.") (citing <u>Jackson v. Onondaga County</u>, 549 F. Supp.2d 204, 214-15 (N.D.N.Y. 2008)).

### 3. Failure to State a Colorable Claim of Retaliation Against M. Sheahan and J. Colvin

Plaintiff references another grievance, this one concerning the Facility's "failure to deliver legal papers to Plaintiff's visitor upon departure[.]" Am. Compl. at 6, ¶21. He does not identify this grievance but contends that because he filed it, his subsequent "requests to send out legal materials with visitor were denied" by M. Sheahan and J. Colvin. <u>Id.</u> He identifies two grievances, SPT 41,411-07 and SPT 42,532-07, but does not state when they were filed or indicate the subjects of the grievances. Based upon Defendants' interrogatory responses (Dkt. #100 & 101), it appears that the grievance which spawned the alleged retaliation was SPT 41,411-07, and the allegedly retaliatory conduct was the subject of grievance SPT 42,532-07. CORC's resolution of SPT 41,411-07 was summarized as follows: "The denial of allowing the grievant's legal materials to be sent out on a visit was based upon

prior conduct of the grievant." Interrogatory Responses of Jeffrey Hale, at 3, ¶¶5, 8 (Dkt. #101). In resolving SPT 42,532-07, CORC found that there was no requirement in NYSDOCCS' policies that SHU inmates be allowed to send out mail via a visitor, as Plaintiff had requested. Interrogatory Responses of Jeffrey Hale at 3, ¶7 (Dkt. #100). Even taking Plaintiff's allegations as true, he cannot establish that defendant Sheahan[3] unconstitutionally interfered with his mailing privileges in retaliation for filing a grievance.

In establishing entitlement to relief under the First Amendment, the plaintiff alleging retaliation "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating fact in the prison officials' decision to discipline plaintiff." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citing Mount Healthy Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977)). The plaintiff must establish that, but for his exercise of a protected right, the alleged wrongful action would not have been taken. Haymes v. Montanye, 547 F.2d 188, 191 (2d Cir. 1976). Defendants' discovery responses substantiate that the denial of Green's request to send

---

[3]

Colvin had no personal involvement in the alleged retaliation, because, as he explains in his interrogatory responses, he was not stationed at Southport at the pertinent time. Colvin states, upon information and belief, that Plaintiff's legal materials were not delivered to Plaintiff's visitor on July 1, 2007, because Plaintiff "had attempted to smuggle personal mail out in the legal documents." Dkt. #98 at 2-3. See also Interrogatory Responses of Jeffrey Hale, at 3, ¶¶5, 8 (noting that the CORC denied permission to send out legal materials with one of Plaintiff's visitors based upon the "prior conduct" of Plaintiff) (Dkt. #101).

out legal materials with a visitor was not done in retaliation for his filing a grievance, and was not contrary to NYSDOCCS' policies. See Dkt. ##100, 101.

Furthermore, to the extent that Plaintiff's allegations can be interpreted as claiming that Defendants illegally interfered with his legal mail, he fails to state a colorable claim. "A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted). While legal mail is afforded the greatest protection, "greater protection [is afforded] to outgoing mail than to incoming mail." Id. (citations omitted). "Restrictions . . . are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater than is necessary or essential to the protection of the particular government interest involved." Id. (citations omitted).

In order to state a claim for denial of access to the courts, including those premised on interference with legal mail, a plaintiff must allege "that a defendant caused 'actual injury,' i.e. took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" Id. (citing Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (quotation omitted)).

Even accepting as true Green's rather muddled allegations that the mail in question was legal, there have been no allegations, nor

would the record support, the conclusion that Defendants caused Green any actual injury (e.g., prevented him from filing something in a timely fashion with the courts). See Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986) (explaining that an action may not give rise to damages if there was "no showing . . . that the inmate's right of access to the courts was chilled or the legal representation was impaired"). Furthermore, Green has only adduced one instance of alleged retaliatory mail-interference, which falls short of establishing a constitutional violation. See Davis v. Goord, 320 F.3d at 351 ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. . . . Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail." (citations omitted); Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975) (holding that a single instance of mail tampering which did not lead the plaintiff to suffer any damage was insufficient to support a constitutional challenge).

### C.   The "Conspiracy" Claims

Plaintiff's third set of claims are grouped under the heading of "Conspiracy", see Am. Compl. at 8, ¶VI (Dkt. #53). He alleges that various NYSDOCCS employees, including P. Jayne, F. Martin, L. McGrain, N. Sampsell, J. Cieslak, and J. Hale, were part of a conspiracy to violate his constitutional rights. Plaintiff states that these individual conspired to conduct "frivolous/bogus

-23-

investigations," id. at 8, ¶¶30-33, or failed to conduct adequate investigations into his grievances. Plaintiff alleges that CORC, McGinnis, Napoli, and Bridge failed to rectify the situation after being put on notice about it by Plaintiff's grievances. Id. at 9, ¶34.

As discussed above, the CORC is not an entity which may be sued. McGinnis, Napoli, and Bridge were not personally involved in any of the alleged constitutional violations. A state employee cannot be held liable under 42 U.S.C. § 1983 absent an allegation and a showing that he or she was personally involved in the violation of the plaintiff's constitutionally protected rights. See, e.g., McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977) (A defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to obtaining award for damages under 42 U.S. § 1983.), cert. denied, 434 U.S. 1087 (1979). Accordingly, the "conspiracy" claims against the CORC, McGinnis, Napoli, and Bridge must be dismissed.

With regard to the named defendants who allegedly failed to conduct adequate investigations into Plaintiff's grievances, "the law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly." Avent v. Doe, No. 9:05-CV-1311, 2008 WL 877176, at *8 (N.D.N.Y. Mar. 31, 2008); accord, e.g., Crenshaw v. Hartman, 681 F. Supp.2d 412, 416 (W.D.N.Y. 2010); see also, e.g., Torres v.

-24-

Mazzuca, 246 F. Supp.2d 334, 342 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address Torres's grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because Torres was not deprived of a protected liberty interest.") (citing, inter alia, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.") (quotation omitted). Because Green "does not have a protected liberty interest in having his grievances investigated at the level of thoroughness that he desires," he therefore "cannot assert a due process claim as to such failures." Torres, 246 F. Supp.2d at 342. Accordingly, Green's claims concerning the failure to fully investigate his grievances are dismissed.

The Court turns next to Green's claims concerning a conspiracy among the Defendants. "To prove a § 1983 conspiracy, a plaintiff must show (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). The intracorporate conspiracy doctrine provides that the officers, agents, and employees of a

-25-

single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other. See, e.g., Farbstein v. Hicksville Pub. Library, 254 Fed. Appx. 50, 50-51 (2d Cir. 2007) (affirming dismissal of conspiracy complaint "at the first step of analysis" because complaint made reference only to employees of same corporation) (citing Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy [under 42 U.S.C. § 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers [ ] and employees, each acting within the scope of his employment.") (citation omitted)).

Here, Plaintiff does not dispute that defendants are all employees of a single state entity–NYSDOCCS. Thus, the Court must dismiss Plaintiff's claims of conspiracy under § 1983 as precluded by the intracorporate conspiracy doctrine. See, e.g., Varricchio v. County of Nassau, 702 F. Supp.2d 40, 62 (E.D.N.Y. 2010) (relying upon the intracorporate conspiracy doctrine to dismiss conspiracy claims brought detainee in county jail against county officials).

**E.   The "First Amendment" Claims**

In the "First Amendment" section of the Amended Complaint, Plaintiff alleges that Southport "has a pattern and practice of interference" with inmates' incoming mail "that is not justified by any legitimate penological concern." Am. Comp. at 10, ¶40. He

states that mail he received on June 6, 2006, and June 21, 2006, was "confiscated by mailroom staff for exceeding facility *five printed copies per correspondence* custom." Id. (emphasis in original).

"A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Davis, 320 F.3d at 351. A prisoner's right to receive and send mail may, however, be regulated. E.g., Davidson v. Mann, 129 F.3d 700, 702 (2d Cir. 1997). "[C]ourts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Davis, 320 F.3d at 351.

The regulation at issue here is set forth in 7 N.Y.C.R.R. § 720.4, "Incoming Mail." Section 720.4(a)(2) of 7 N.Y.C.R.R. provides that "*[a]ll* incoming general correspondence will be opened and inspected for cash, checks, money orders, printed or photocopied materials or contraband. The inmate's presence is not required during the inspection of incoming general correspondence." Id. (emphasis supplied). Section 720.4(c) of 7 N.Y.C.R.R. pertains specifically to printed or photocopied materials received by an inmate:

> (2) A limit of five pages of printed or photocopied materials (an individual newspaper clipping will be considered one page) may be received within a piece of regular correspondence (except as provided in paragraph (3) of this subdivision). . . .
>
> (3) Not to exceed once every four months, an inmate may make a written request to the superintendent to receive in excess of five pages of printed or photocopied legal papers specifically related to the inmate's current legal

> matter . . . within a piece of regular correspondence.
> The inmate shall make the request in advance,
> specifically identifying the legal papers, including the
> approximate number of pages, and state why they cannot be
> obtained via the facility law library or privileged
> correspondence . . . . If approved, the piece of
> correspondence must be received within 30 days
> thereafter. . . .

7 N.Y.C.R.R. § 720.4(c)(2)-(3). The documents provided by Defendants during discovery indicate that Southport followed the directives set forth in 7 N.Y.C.R.R. § 720.4 and informed Plaintiff that he could make a request to the Superintendent to receive additional pages in the mail pursuant to 7 N.Y.C.R.R. § 720.4. See, e.g., Dkt. #55, p. 226. There was no violation of New York State regulations, much less a violation of Plaintiff's Federal constitutional rights under the First Amendment.

### F.    The Eighth Amendment Claims

Plaintiff's final set of claims are titled "Eighth Amendment". See Am. Compl., ¶¶46-53 (Dkt. #53). He first complains about a memorandum issued by Deputy Superintendent for Security Services, P. Chappius Jr. ("Chappius"), to all security staff on October 2, 2003, see Dkt. #57, p.493. This memo stated in pertinent part that

> inmates who have their hair in braids below the hairline
> will be advised they are not in compliance with
> [NYSDOCCS]'s Grooming Standards. A direct order will be
> given . . . to remove the braids. If [the inmate]
> refuses, a Misbehavior Report shall be submitted.
> Furthermore, in order to receive a shower or exercise, an
> inmate must remove the braids or allow staff to conduct
> a frisk of their braids. . . If the inmate refuses to
> allow staff to frisk his braids, he will be deprived of
> said exercise or shower and a Deprivation Order will be
> submitted, along with the Misbehavior Report.

Id.[4] Green states that he was erroneously deprived of showers and recreation on several unspecified occasions because of this policy, which he claims amounts to the infliction of cruel and unusual punishment. Am. Comp., ¶46.  The documents submitted by Defendants refute Green's allegations. After he grieved the denial of exercise and showers to Superintendent McGinnis, he was interviewed by Sergeant Casler. During the interview, Chappius's memo regarding the braids policy was discussed. In his follow-up memo, Acting Deputy Superintendent for Security Services D. Sullivan noted, "[Y]ou [i.e., Green] admitted [to Sergeant Casler] that you were wrong and have since taken corrective measures to comply with the memorandum." Dkt. #57, p.488. Green cannot be heard to complain about a policy which is in line with NYSDOCCS standards, and which he admitted violating. See id.

Plaintiff also complains that he was denied a permit for a hair-clipper by Dr. Barnard, causing him to suffer itchy and irritated skin. Not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105 (1976). Instead, the plaintiff must show that he had a sufficiently serious

---

[4]
    Courts in this Circuit have found NYSDOCCS' regulations regarding inmate hair-styles and hair-length to be reasonably related to important facility concerns such as safety and security. E.g., Leach v. Dufrain, 103 F. Supp.2d 542, 547 (N.D.N.Y. 2000) (citing Hines v. South Carolina Dept. of Corrs., 148 F.3d 353, 356 (4th Cir. 1998)).

medical need, and that the defendant was deliberately indifferent to that serious medical need, id. at 104, in that the defendant, knowing the plaintiff was at risk of serious harm, nevertheless acted with callous disregard to that risk, Farmer v. Brennan, 511 U.S. 825, 834 (1994). Here, Plaintiff has not demonstrated that his skin condition, *Pseudofolliculitis Barbae* ("PFB"),[5] was a sufficiently serious medical need for Eighth Amendment purposes. See Northern, 2007 WL 5325868, at *2 ("Although PFB is an annoying skin condition there is no evidence that it is a serious medical condition." It is well settled that "mere differences in opinion regarding medical treatment do not give rise to an Eighth Amendment violation." Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Plaintiff's mere disagreement with Dr. Barnard's assessment of whether he required a hair-clipper for his claimed dermatological condition is not an actionable Eighth Amendment claim for purposes of 42 U.S.C. § 1983. Accord, Northern, 2007 WL 5325868, at *2 (dismissing § 1983 claim by inmates alleging that defendants were deliberately indifferent to their medical condition (FSB) by failing to allow them to possess Andis Shaver/Trimmers to alleviate this condition although other inmates were allowed to have the trimmers).

---

[5] "PFB is a facial skin condition that occurs when hair follicles curve back into the skin which become inflamed." Northern v. Fuchs, No. 07-C-142-S, 2007 WL 5325868, at *2 (W.D. Wis. July 16, 2007).

Finally, Plaintiff contends that the CORC and defendants Collett, Lindquist, and McGinnis failed to remedy the wrongs (i.e., the denial of recreation and showers for violating the braids policy and the denial of clippers) after learning of them through the grievances he filed. As explained above in this Decision and Order, the CORC is not a entity which properly may be sued in a § 1983 action. See Robinson, 2009 WL 3246818, at *9 n.14. Because the remaining defendants were not personally involved in the alleged constitutional violations, no liability attaches to any of them for purposes of § 1983 liability. E.g., Hernandez v. Keane, 341 F.3d 137, 144-45 (2d Cir. 2003) (citation omitted). The necessity of personal involvement is especially pertinent when a NYSDOCCS official without a medical background is called upon to review a doctor's medical opinion. Gonzales v. Wright, 9:06-CV-1424 (JMH), 2010 WL 681323, at *10 (N.D.N.Y. Feb. 23, 2010) ("[T]he Second Circuit has also explicitly held the denial of a grievance on medical matter is insufficient to demonstrate personal involvement on behalf of a prison Superintendent.") (citing Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003)).

**G. Summary**

Viewing Plaintiff's claims singly and in the aggregate, the Court finds that he identified no serious deprivations of his basic human needs, no acts of deliberate indifference, no instances of retaliatory or discriminatory treatment. "Routine discomfort and

restrictive or even harsh prison conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" Graham v. Perez, 121 F. Supp.2d 317, 323 & n.10 (S.D.N.Y. 2000) (rejecting claim that SHU conditions (i.e., limiting protective custody class inmates to only two and a half hours out of their cells per day, depriving them of job opportunities, denying prison wages, limiting the location and content of their meals, denying them hot water and electrical outlets in their cells, providing inadequate lighting, limiting their recreational opportunities, denying stamp buying opportunities, limiting access to newspapers, limiting personal phone calls, requiring them to wear prison-issued clothing, and limiting personal grooming opportunities) constitute "serious deprivations of basic human needs") (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981) and citing Hudson v. McMillian, 503 U.S. 1, 9 (1992).

## V.  Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss (Dkt. ##76 & 78) are granted and Plaintiff's Amended Complaint (Dkt. #53) is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    April 9, 2012
          Rochester, New York